**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**

JANE DOE,

     **Plaintiff,**

v.                          **Case No.**

**GRANTS-CIBOLA COUNTY SCHOOLS,**
**ALTON AUTREY, in his official and individual capacities,**
**DWAYNE TOIVANEN, in his official and individual**
**capacities, and JACOB JAURIQUE,**
**in his individual capacity,**

     **Defendants.**

<u>**Jury Trial Requested**</u>

**COMPLAINT FOR CIVIL RIGHTS VIOLATIONS, TITLE IX VIOLATIONS,**
<u>**AND TORTIOUS CONDUCT**</u>

COMES NOW Plaintiff Jane Doe, by and through the undersigned counsel, Carolyn M. "Cammie" Nichols and Maggie H. Lane of Rothstein Donatelli LLP, and brings the following causes of action under 42 U.S.C. § 1983, 20 U.S.C. § 1681, the Fourth and Fourteenth Amendments to the United States Constitution, and the New Mexico Tort Claims Act, NMSA 1978, §§ 41-4-1, *et seq*.:

<u>**PARTIES**</u>

1.     Plaintiff Jane Doe is a resident of Albuquerque, New Mexico.  At all times material hereto, Plaintiff Doe was a minor residing with her parents in Cibola County, New Mexico.

2.     Defendant Grants-Cibola County Schools ("GCCS") oversees the operation of public schools within Grants, New Mexico, and greater Cibola County, New Mexico,

including Grants High School.  Defendant GCCS is a governmental entity and local public body as those terms are defined in the New Mexico Tort Claims Act, NMSA 1978, §§ 41-4-3(B) and (C), as amended.  Under NMSA 1978, § 22-5-4(E), GCCS has the capacity to sue or be sued.  Defendant GCCS is responsible for the administration of public schools within its geographic boundaries, including Grants High School.  Upon information and belief, at all times material hereto, GCCS received federal funding and financial assistance.  At all times material hereto, Defendant GCCS employed Defendant Jacob Jaurique.  Plaintiff's claims under the New Mexico Tort Claims Act against Defendant GCCS arise under NMSA 1978, § 41-4-6.  Under the New Mexico Tort Claims Act, Defendant GCCS is vicariously liable for the acts and omissions of Defendant Jaurique.  At all times relevant, Defendant GCCS was responsible for adopting and implementing the policies, customs, and practices of its employees and agents, including Defendant Jaurique.  Defendant GCCS is a political subdivision of the State of New Mexico and a "person" under 42 U.S.C. § 1983.

3.      Defendant Alton Autrey was, at all times material hereto, employed by Defendant GCCS as a principal at Grants High School.  He was one of Defendant Jaurique's direct supervisors during the time that he was employed at Grants High School by GCCS as a teacher.  Upon information and belief, Defendant Autrey resides in Cibola County, New Mexico.  At all times material hereto, Defendant Autrey was a public employee as those terms are defined in the New Mexico Tort Claims Act, NMSA 1987, § 41-4-3, as amended.  Defendant Autrey acted in the course and scope of his duties as a GCCS employee and under color of state and local law.  He is sued in his individual and official capacities for purposes of Plaintiff's claims brought under 42 U.S.C. § 1983.

4.     Defendant Dwayne Toivanen was, at all times material hereto, employed by Defendant GCCS as the personnel director for the School District.  He was in charge of all of GCCS's personnel matters, including the hiring and firing of the district's employees.  Upon information and belief, Defendant Toivanen resides in Cibola County, New Mexico.  At all times material hereto, Defendant Toivanen was a public employee as those terms are defined in the New Mexico Tort Claims Act, NMSA 1987, § 41-4-3, as amended.  Defendant Toivanen acted in the course and scope of his duties as a GCCS employee and under color of state and local law.  He is sued in his individual and official capacities for purposes of Plaintiff's claims brought under 42 U.S.C. § 1983.

5.     Defendant Jacob Jaurique was, at all times material hereto, employed by GCCS as a teacher at Grants High School. Upon information and belief, Defendant Jaurique resides in Cibola County, New Mexico.  At all times material hereto, Defendant Jaurique was a public employee as those terms are defined in the New Mexico Tort Claims Act, NMSA 1978, § 41-4-3 (F), as amended.  Defendant Jaurique acted in the course and scope of his duties as a GCCS employee and under color of state and local law.  He is sued in his individual capacity for purposes of Plaintiff's claims brought under 42 U.S.C. § 1983.

6.     With respect to Plaintiff's New Mexico Tort Claims Act claim, the acts and omissions complained of herein all constitute a basis for liability against Defendant GCCS, and come within the scope of the waivers of immunity contained within the New Mexico Tort Claims Act, NMSA 1978, §§ 41-4-1, *et seq*.

7.     With respect to Plaintiff's New Mexico Tort Claims Act claims, Defendant GCCS received actual notice of Plaintiff's intent to file claims under the New Mexico Tort Claims Act.  Defendant GCCS also received timely written notice of Plaintiff's New Mexico

Tort Claims Act claims under relevant statutory and substantive due process considerations. *See* N.M. Const. Art. II, §§ 4 & 18; NMSA 1978, §§ 37-1-10 & 41-4-16(B).

## JURISDICTION AND VENUE

8.     Jurisdiction over the federal claims is proper under 28 U.S.C. §§ 1331 and 1343.  Supplemental jurisdiction over the state claims is proper under 28 U.S.C. § 1367 (a) because the state claims and the federal claims derive from the same common nucleus of operative facts.

9.     Venue is proper in New Mexico under 28 U.S.C. § 1391(b) because all events giving rise to the claims occurred within this district.

## ALLEGATIONS

10.     Plaintiff hereby incorporates all of the preceding paragraphs, as if fully stated herein.

11.     Plaintiff Jane Doe is currently a college student living in Albuquerque, New Mexico.  She graduated from Grants High School in the spring of 2016.  At the time of the allegations described herein, the 2013/2014 academic year, Plaintiff Doe was a fifteen-year-old sophomore at Grants High School.

12.     Grants High School is within the Grants-Cibola County School District (GCCS).  At all times relevant to this complaint, Defendant GCCS was responsible for the daily operation of Grants High School.

13.     Defendant Jacob Jaurique applied with Defendant GCCS to be a high school welding instructor on June 19, 2013.

14.     At some point prior to Defendant Jaurique's hiring, Defendant Dwayne Toivanen, personnel director for GCCS, approached Defendant Autrey concerning the possibility of hiring Defendant Jaurique to teach welding at Grants High School.

15.     At the time Defendant Jaurique applied with Defendant GCCS to become a high school teacher, he had no teaching license, no college education, and no teaching experience.

16.     It appears that Defendant Jaurique's sole qualification to teach high school welding was a three-year stint as a welder/shop foreman in Las Vegas, Nevada nine years prior.

17.     Despite his questionable qualifications for employment as a high school welding teacher, Defendant GCCS offered Defendant Jaurique a job on July 8, 2013.

18.     Once hired, Defendant Jaurique taught welding, and held a study skills class.

19.     In additional to his teaching duties, Defendant Jaurique was one of Grants High School's boys and girls wrestling coaches.

20.     As a welding instructor and coach, Defendant Jaurique had control over several spaces within the school, including his classroom, welding shop, office, tool room, and wrestling studio.

21.     Many of these spaces were isolated in nature, completely shielded from hallways or other classrooms.

22.     Students referred to Defendant Jaurique as "Mr. J."

23.     As a high school wrestling coach, Defendant Jaurique would take students to out-of-town meets.

24.     Shortly after the Fall 2013 semester began, and a matter of weeks into Defendant Jaurique's employment with Grants High School, he touched one of the female high school students inappropriately.

25.     Shortly after this incident, the female student, hereinafter referred to as "Student A," went with her grandmother to meet with Defendant Autry to report what had happened.

26.     Upon information and belief, neither Defendant Autry nor GCCS investigated these allegations concerning Student A, confronted Defendant Jaurique concerning the allegations, reported the allegations to law enforcement or CYFD, or in any way reprimanded Defendant Jaurique or noted the incident within his personnel file.

27.     On another occasion, Defendant Autrey saw a different female high school student, hereinafter referred to as "Student B," alone in Jaurique's office.

28.     Defendant Autrey later heard a rumor that Student B was having a sexual relationship with Defendant Jaurique.

29.     That same semester, upon information and belief, Defendant Autrey received multiple anonymous notes indicating that the "welding teacher" was having sexual relationships with female students.

30.     The administration conducted "preliminary" investigations into these allegations, and concluded that the allegations were unsubstantiated.

31.     Upon information and belief, the school failed to report these allegations to law enforcement or CYFD, or in any way reprimand Defendant Jaurique or document the allegations within his personnel file.

32.     On one occasion, Defendant Autrey spoke to Jaurique about buttoning up his shirt appropriately, and drawing clear lines with the students.

33.     On another occasion, the administration of Grants High School, presumably Defendant Autrey, received an anonymous note that Defendant Jaurique kept "provocative pictures" of his students on his work computer.  No such photos were recovered from Defendant Jaurique's work computer.

34.     Although he concluded that all of the above allegations were unsubstantiated, Defendant Autrey purportedly "warned" Defendant Jaurique that this needed to be the end of these rumors.

35.     Upon information and belief, none of above allegations or subsequent investigations were ever documented within Defendant Jaurique's personnel file.

36.     Defendant Autrey has indicated that only "serious" incidents with clear indicators of abuse are documented in employee personnel files, and that "unsubstantiated" allegations like those concerning Defendant Jaurique are rarely documented in the school's personnel files.

37.     Upon information and belief, at no time after Defendant Autrey and the administration of Grants High School were alerted to the multiple instances of suspected misconduct discussed above did the school increase its supervision or oversight of Defendant Jaurique, who spent entire class periods, wrestling practices, and out-of-town trips alone with female high school students.

38.     Students at Grants High School noticed that Defendant Jaurique was openly flirtatious with female students.

39.     Defendant Jaurique would often make physical contact with female students when talking to them, often by holding onto their hips.

40.     While students observed Defendant Jaurique touching female students inappropriately, they were afraid to tell anyone.

41.     Many students were intimidated by Defendant Jaurique.  His mood was unpredictable, and he would often get angry.

42.     Once, Defendant Jaurique threw a chair out of anger in front of students.

43.     Other students, particularly male students, looked up to the young male teacher and thought he was cool.

44.     Defendant Jaurique would tell students stories of selling drugs when he was younger.

45.     After disclosure of the incidents serving as the basis for this complaint, and likely due to the previous anonymous allegation that Defendant Jaurique stored inappropriate photographs of female students on his work computer, Assistant Principal Anita Bryant gave New Mexico State Police written permission to search Defendant Jaurique's work computers.

46.     After Ms. Bryant provided New Mexico State Police with consent to search the computers, Defendant Toivanen, who had recommended Jaurique as a candidate for employment at Grants High School, informed law enforcement that there were legal issues that prevented him from providing permission to search.

47.     Defendant Toivanen did not specify what legal issues would prohibit GCCS from providing New Mexico State Police with permission to search Defendant Jaurique's work computers.

48.     New Mexico State Police later addressed Defendant Toivanen's revocation of consent to search Defendant Jaurique's work computers with GCCS Superintendent Marc Space.

49.     Superintendent Space was unaware that Defendant Toivanen had revoked the consent, and did not understand why he had done so.

50.     Superintendent Space ordered Defendant Toivanen to give permission to New Mexico State Police to search the computers.

51.     When ultimately questioned by law enforcement concerning his touching of female students at Grants High School, Defendant Jaurique commented that there was a "culture of touching people on the butts" at the school.

### DEFEFNDANT JAURIQUE'S SEXUAL ABUSE OF PLAINTIFF DOE

52.     An anonymous source reported Defendant Jaurique's sexual abuse of Plaintiff Doe to a nurse at Grants High School on January 24, 2014.

53.     Defendant Jaurique's sexual abuse of Plaintiff Doe began in late September of 2013, the week of football homecoming at Grants High School.

54.     Plaintiff Doe had Defendant Jaurique as a teacher for her first-period Study Skills class and her fourth-period Welding class.

55.     That week, as part of the homecoming festivities, students were decorating the doors of their home room classes.

56.     Plaintiff Doe volunteered to decorate Defendant Jaurique's classroom door along with another student.

57.     When the other student left Plaintiff Doe to get scissors from another teacher, Defendant Jaurique approached Doe and asked when she was going to give him "the time of day."

58.     This question made Plaintiff Doe uncomfortable and she quickly changed the subject to talk about the door she was decorating.

59.     On another occasion, when Plaintiff Doe was in welding class, Defendant Jaurique told Doe she was not welding correctly.

60.     Defendant Jaurique told Plaintiff Doe to go to the back of the classroom with him so he could help her with her welding.

61.     Plaintiff Doe was the only female student in Defendant Jaurique's welding class.

62.     Once in the back of the classroom away from the other students, Defendant Jaurique placed himself behind Plaintiff Doe, and held her hands to "show her how to weld properly."

63.     Defendant Jaurique told Plaintiff Doe that he had a big crush on her and that he got nervous around her.

64.     Defendant Jaurique asked Plaintiff Doe to write him a note about how she felt about him.

65.     Plaintiff Doe did not write Defendant Jaurique a note despite his request.

66.     The following day, Defendant Jaurique asked where the note was.  When Plaintiff Doe responded that she did not know, Defendant Jaurique asked why she would not write him a note after he had shared his feelings with her, which was difficult for him to do.

67.     On another occasion, Plaintiff Doe was cold and asked Defendant Jaurique if he could turn the heat up.

68.     Rather than turn the heat up, Defendant Jaurique offered Plaintiff Doe his jacket.

69.     Plaintiff Doe declined Defendant Jaurique's offer for his jacket, and told him that she had her own.

70.     On another occasion, Plaintiff Doe asked Defendant Jaurique during welding class what kind of tool she should be using while working on a welding project, and Defendant Jaurique instructed Plaintiff Doe to go to the tool room with him.

71.     The tool room was somewhat secluded from the rest of the class.

72.     Upon information and belief, Defendant Jaurique asked Plaintiff Doe to go to the tool room so that it would be more difficult for the other students in the class to see them.

73.     Once in the tool room, Defendant Jaurique grabbed Plaintiff Doe's buttocks.

74.     Plaintiff Doe quit asking for different tools during welding class because she did not want Defendant Jaurique to take her to the tool room alone.

75.     After this incident, Plaintiff Doe asked a classmate to watch out for her, and to follow her in to the tool room if it looked like Jaurique was trying to get her alone.

76.     Defendant Jaurique once pulled Plaintiff Doe into his office and told her that he really liked her, that she was cute, and that he wished she was older or that he was younger.

77.     Defendant Jaurique also asked Plaintiff Doe once if she was dating anyone in her class.

78.   Plaintiff Doe dreaded going to school, as she feared having to be around Defendant Jaurique.

79.   Plaintiff Doe tried to have a friend with her every time she thought she would come into contact with Defendant Jaurique.

80.   Plaintiff Doe would drop her bags off in Defendant Jaurique's classroom before school started, as it was her first-period class.

81.   While Defendant Jaurique was normally not in his classroom when she arrived at school, one morning he was.

82.    As Plaintiff Doe dropped off her bags, Defendant Jaurique walked past Plaintiff Doe, and pinched her buttocks as he said "good morning" to her.

83.   Defendant Jaurique was often mean to Plaintiff Doe when she was around other students.

84.   When Defendant Jaurique was not able to get Plaintiff Doe alone, or Doe was able to keep Defendant Jaurique from touching her, Defendant Jaurique would get angry.

85.   Defendant Jaurique would become hostile toward Plaintiff Doe and take it out on her by criticizing her work or being hard on her in front of the other students.

86.   Defendant Jaurique's advances became more frequent by the end of the Fall 2013 semester.

87.   Defendant Jaurique began touching Plaintiff Doe's breasts, and finding ways to pinch or grab her buttocks more frequently, normally during first and fourth period, when he had Plaintiff Doe in his classroom.

88.   Defendant Jaurique would look around to make sure no one was looking and then touch Plaintiff Doe's buttocks.

89.     When Plaintiff Doe returned from Christmas break, Defendant Jaurique had constructed a gate on the entrance of the tool room, further decreasing the tool room's visibility to the students in the main shop area.

90.     Defendant Jaurique assigned Plaintiff Doe a "job," working in the tool room alone, checking out glasses and safety jackets.

91.     Defendant Jaurique would corner Plaintiff Doe within the tool room, and pinch her buttocks.

92.     Defendant Jaurique would also instruct Plaintiff Doe to stand in certain locations within the tool room so that students in the classroom would not be able to see her.

93.     Plaintiff Doe would try to work in the doorway so that her classmates could see her.

94.     Once, Defendant Jaurique instructed Plaintiff Doe to clean the tool room.

95.     While Plaintiff Doe was cleaning the tool room, she found a condom.

96.     Plaintiff Doe pointed the condom out to the school's other welding teacher, who happened to be nearby, and he simply laughed and shook his head.

97.     Once, Plaintiff Doe was getting ready to leave class and Defendant Jaurique pushed her up against the wall.

98.     Defendant Jaurique then asked Plaintiff Doe to kiss him.

99.     Defendant Jaurique told Plaintiff Doe that she knew she wanted it as bad as he did.

100.    Plaintiff Doe pushed Defendant Jaurique off and out of her way and got out of the classroom.

13

101.     After this incident, Plaintiff Doe told Defendant Jaurique that the tool room assignment was too difficult for her to do on her own and that she needed another student to help her.

102.     Plaintiff Doe made this request in the hopes that Defendant Jaurique would not attempt to touch her if someone else was also in the room.

103.     Defendant Jaurique informed Plaintiff Doe that she only had to work in the tool room through the end of the week and then he would rotate the classroom assignments.

104.     When Plaintiff Doe returned to welding class the following week, however, Defendant Jaurique again assigned her to work in the tool room alone.

105.     Plaintiff Doe did not want to return to the tool room, as she was afraid that Defendant Jaurique would continue to use it as a way to get her away from the rest of her classmates and touch her inappropriately.

106.     Plaintiff Doe refused to go into the tool room, and Defendant Jaurique instructed Plaintiff Doe to get her stuff, and sent her to In-School Suspension.

107.     While Plaintiff Doe confided in her friends about Defendant Jaurique's actions towards her, she was afraid to tell an adult what was happening.

108.     Prior to the disclosure of the incidents described herein, Plaintiff Doe held a 'B' in her Study Skills class.

109.     After Defendant Jaurique was placed on administrative leave, and after he learned that Plaintiff Doe had disclosed the details concerning the sexual abuse, Plaintiff Doe's grade in Study Skills was changed to a 'D'.

110.     Upon information and belief, Defendant Jaurique was able to access Grants High School's grading program remotely in order to change this grade.

111.    Upon information and belief, Defendant Jaurique changed her grade in retaliation for her disclosure of the sexual abuse.

112.    The day Defendant Jaurique was placed on administrative leave, Plaintiff Doe's volleyball bag, which she left in Defendant Jaurique's office within his classroom that day, went missing.

113.    Plaintiff Doe's bag contained her clothing for volleyball practice, including the spandex shorts she wore during practice.

## DEFENDANT JAURIQUE'S SEXUAL ABUSE
## OF OTHER FEMALE STUDENTS

114.    Consistent with the anonymous notes, the early actual disclosures of sexual abuse, and the observations of school employees, including Defendant Autrey, Defendant Jaurique had been sexually abusing multiple female high school students throughout the 2013/2014 academic year.

115.    Once law enforcement began their criminal investigation into the abuse of Plaintiff Doe, other specific instances of sexual abuse surfaced.

116.    Consistent with the "rumors" and notes, Student B had been having a sexual relationship with Defendant Jaurique.

117.    Fellow classmates noticed Defendant Jaurique's affectionate behavior toward Student B.

118.    For example, on a school trip during the Fall 2013 semester, Defendant Jaurique and Student B sat together on the school bus.

119.    Student B also remarked to one student that she and Defendant Jaurique were "messing around," and "doing stuff."

120.    Student B confided in fellow classmates during the Fall 2013 semester that she knew where Defendant Jaurique lived.

121.    Student B also shared that she and Defendant Jaurique frequently text messaged each other throughout the day.

122.    On one occasion, Student B shared with classmates that she was wearing Defendant Jaurique's wedding band.

123.    Student B was at the time wearing what appeared to be a man's wedding band.

124.    During the Fall 2013 semester, Defendant Jaurique had penile-vaginal and penile-oral sex with Student B in the metal shop.

125.    After Defendant Jaurique was placed on leave during the Spring 2014 semester, Defendant Toivanen disclosed to law enforcement several notes found within Defendant Jaurique's classroom.

126.    One note, which upon information and belief is from Student B, stated:

> *I hope you know what this coke means.  It means that any time I'm late for class I get to go hide in your classroom.  It also means that THIS is mutual.  I got you something and now it's your turn to get me something!  OH YEAH… You're Welcome!!!*

127.    Another note, which appears to be an exchange between two different students stated:

> *OMG!*
> *[Student B] is doing the welding teacher.  WTF!!!*
> *She's gross!*
> *I know!*

128.    Another unsigned note, also believed to be from Student B, simply stated "*I ♥ U*," with Defendant Jaurique's first name (Jacob) written within the heart.

129.    The criminal investigation also uncovered the sexual abuse of another student, hereinafter referred to as "Student C."

130.    Student C was not one of Defendant Jaurique's students, but she was one of the wrestling team's managers.

131.    Defendant Jaurique was flirtatious with Student C and liked to hug her.

132.    Defendant Jaurique frequently complimented Student C on her appearance.

133.    Once, Defendant Jaurique touched Student C on the arm and told her that she looked beautiful.

134.    Defendant Jaurique also asked Student C for her phone number.

135.    Student C never gave Defendant Jaurique her phone number.

136.    Defendant Jaurique would find ways to brush up against and make physical contact with Student C when he would walk past her.

137.    When this would happen, Defendant Jaurique would touch her inappropriately.

138.    Defendant Jaurique would act as if the contact were an accident, or as if he did it jokingly.

139.    On one occasion, Student C was working on a project for the wrestling team within Defendant Jaurique's classroom.

140.    When Student C and Defendant Jaurique left the classroom at the same time, Defendant Jaurique touched Student C's buttocks.

141.    Defendant Jaurique did not react or say anything to Student C after he touched her buttocks.

142.    On another occasion, Student C was alone mopping the room where they had wrestling practice, and Mr. Jaurique brushed Student C's buttocks with his hand.

143.    Defendant Jaurique applied more pressure to Student C's buttocks this time, and again said nothing to Student C after it happened.

144.    Student C did not report this incident or any other because she felt uncomfortable talking about it.

145.    Student C also believed that if she reported Defendant Jaurique's behavior she would be kicked off of the wrestling team.

146.    At a Grants High School basketball game, Student C heard rumors that only two weeks after Defendant Jaurique started teaching at Grants High School, he was having sexual relationships with students.

147.    Once wrestling season began, Student C heard that Student B was sleeping with Defendant Jaurique, and that Student B was wearing his wedding ring.

148.    Student C ultimately quit the wrestling team after she heard that Defendant Jaurique was having a sexual relationship with Student B.

149.    She was afraid that, given Defendant Jaurique's past actions toward her, he would proposition her.

150.    Student C did not want to put herself in a position where Defendant Jaurique would approach her for sex.

151.    Student C was also concerned that if she reported Defendant Jaurique's actions, she would create problems for herself at school, and in her personal life.

152.    Student C was in a relationship at this time.

153.    Student C also believed that she was not in a position to tell Defendant Jaurique to stop touching her.

154.    After Defendant Jaurique was placed on administrative leave, Student C ran into Defendant Jaurique at a Wal-Mart store.

155.    Defendant Jaurique asked Student C if she had heard anything about him at school, and told Student C that he had not done anything wrong.

156.    Defendant Jaurique pleaded with Student C to help him get his job back.

## THE CRIMINAL PROSECUTION
## OF DEFENDANT JACOB JAURIQUE

157.    On June 13, 2014, after the completion of a criminal investigation, Defendant Jaurique was charged with one count of criminal sexual penetration of a minor in connection with his sexual abuse of Student B.  He was also charged with two counts of criminal sexual contact of a minor in connection with his sexual abuse of Plaintiff Doe and Student C.

158.    On October 7, 2016, Defendant Jaurique pleaded guilty to one count of criminal sexual contact of a minor, a fourth degree felony, in connection with his sexual abuse of Plaintiff Doe.  He is currently on supervised probation, and stands to receive a conditional discharge upon the successful completion of probation.

159.    The October 7, 2016 Plea and Disposition Agreement provides that Defendant Jaurique will not have to register as a sex offender.

## DEFENDANT GCCS'S KNOWLEDGE AND RATIFICATION
## OF STUDENT SEXUAL ABUSE

160.    Defendant GCCS has tolerated and encouraged an ongoing and pervasive culture of student sexual abuse.

161.    As Defendant Jaurique indicated during his interview with law enforcement during the criminal investigation, there was a culture at Grants High School of touching students inappropriately.

162.    Upon information and belief, other similar instances of student sexual abuse have occurred within the Grants-Cibola County Schools in recent years.

163.    For example, upon information and belief, prior to Defendant Jaurique's employment with GCCS, another male teacher at Grants High School had an inappropriate sexual relationship with a female high school student.

164.    Upon information and belief, no disciplinary action was taken against this teacher in connection with this incident, although, upon information and belief, he left Grants High School shortly after Plaintiff Doe disclosed the sexual abuse and Defendant Jaurique was placed on leave.

165.    The teacher continues to teach high school in New Mexico outside of the Grants-Cibola County school district.

166.    In addition, in May of 2014, a substitute teacher at Mt. Taylor Elementary School, within the GCCS school district, was accused of sexual misconduct with female students during the 2012/2013 schoolyear.

167.    Upon information and belief, while the victims' parents reported the abuse to the New Mexico State Police, Defendant GCCS never reported the allegations to law enforcement.

168.    Also upon information and belief, the administration at Mt. Taylor Elementary School informed the victims' parents that they would not report the allegations to the police until GCCS had conducted its own investigation and were instructed by personnel director, Defendant Dwayne Tiovanen to do so.

169.    When Defendant GCCS decided to offer Defendant Jaurique a job teaching high school, they conducted no meaningful inspection of his qualifications to be in a position where he would have access to young female students.

170.    Once hired, Defendant GCCS and its employees, including Defendants Toivanen and Autrey, failed to properly supervise Defendant Jaurique, an individual with no teaching experience.

171.    Once Defendants GCCS, Toivanen, and Autrey learned of Defendant Jaurique's abuse of Student A, only weeks into Defendant Jaurique's first year teaching, and once they were made aware of the allegations of Defendant Jaurique's sexual abuse of other students, including but not limited to the abuse of Student B, they failed to report the sexual misconduct, failed to take any disciplinary action against Defendant Jaurique, failed to document the information within his personnel file, and failed to in any way increase supervision of Defendant Jaurique.

172.    Defendant GCCS had a duty under state law to provide appropriate supervision of its subordinate employees, including Defendant Jaurique.

173.    Defendants GCCS, Toivanen, and Autrey knew, should have known, or had reason to believe that Defendant Jaurique was sexually abusing female students at Grants High School.

174.    Had Defendants GCCS, Toivanen, and Autrey appropriately supervised Defendant Jaurique, and had they taken appropriate action upon learning of the sexual abuse, including reporting such abuse to law enforcement and CYFD, the continued sexual abuse of female students, including Plaintiff Doe, could have been avoided.

175.    As a result of Defendants' acts and deliberate omissions, Plaintiff Doe has suffered severe emotional distress, anxiety, and depression.

176.    As a result of Defendants' acts and deliberate omissions, Plaintiff Doe was ostracized by fellow students at Grants High School.  Fellow students criticized Plaintiff Doe and Students A, B, and C, saying that they were "showing off" for Defendant Jaurique, and wearing provocative clothing for him, as though it was their fault that they had been abused.

177.    As a result of Defendants' outrageous, intentional, reckless, wanton, and/or willful conduct toward Plaintiff Doe, she has suffered injuries and damages.

## COUNT I

**(Plaintiff's Claim Against Defendant Jaurique under 42 U.S.C. § 1983 – Due Process)**

178.    Plaintiff Doe incorporates all of the preceding paragraphs as if fully stated herein.

179.    Plaintiff Doe has a right to bodily integrity under the Fourteenth Amendment to the U.S. Constitution.

180.    Defendant Jaurique deprived Plaintiff Doe of her substantive due process right to bodily integrity under the Fourteenth Amendment to the U.S. Constitution.

181.    Defendant Jaurique deprived Plaintiff Doe of her Fourteenth Amendment rights to substantive due process by physically, mentally, and emotionally abusing her.

182.    By entering a guilty plea to one count of criminal sexual contact of a minor in connection with the sexual abuse of Plaintiff Doe, Defendant Jaurique has admitted to committing such abuse.

183.    As a state actor, Defendant Jaurique carried out, in a constitutionally impermissible manner, the functions assigned to him by Defendant GCCS.

184.     Defendant Jaurique engaged in actions and omissions that were egregious, outrageous, fraught with unreasonable risk, and conscious shocking.  Such actions harmed Plaintiff Doe, who was a member of a particular, limited, closed group, namely, female students at Grants High School.

185.     Defendant Jaurique was not involved in a situation demanding split-second judgments.  Instead, Defendant Jaurique had adequate time for thoughtful deliberation.

186.     Defendant Jaurique's conduct, as alleged herein, and in the context of the situation, shocks the conscience.

187.     The conduct of Defendant Jaurique, as alleged herein, was a direct and proximate cause of Plaintiff Doe's injuries and damages.

188.     Defendant Jaurique's conduct involved intentional misconduct, recklessness, willfulness, and callous indifference to Plaintiff Doe's rights. As Defendant Jaurique's conduct was motivated by malice, evil motive or intent, Plaintiff is entitled to recover awards of punitive and exemplary damages against Defendant Jaurique in amounts to be determined at trial.

189.     The constitutional rights Defendant Jaurique violated were clearly established prior to September, 2013, and any reasonable high school administrator, teacher or coach would have been aware that the conduct described herein would violate Plaintiff's constitutional rights.

## COUNT II

**(Plaintiff's Claims Against Defendant GCCS, and Defendants Autrey and Toivanen, in their official capacities, under 42 U.S.C. § 1983 – Due Process)**

190.     Plaintiff Doe incorporates all of the preceding paragraphs as if fully stated herein.

191.     Defendants GCCS, Autrey, and Toivanen had a duty to exercise due care in the supervision of their staff, teachers, and contractors.  In addition, Defendants GCCS, Autrey, and Toivanen had a duty to properly screen, hire, train, monitor, supervise and/or discipline staff, teachers, and contractors employed by Defendant GCCS. Defendants GCCS, Autrey, and Toivanen had a further duty to ensure that staff, teachers, and contractors were aware of and guided by appropriate policies and procedures concerning student safety and the welfare of students.

192.     Defendants GCCS, Autrey, and Toivanen failed to adequately train, supervise, and discipline Defendant Jaurique in his activities.  This failure caused Plaintiff Doe to be subjected to the physical, mental, and emotional abuse described above.  Defendants GCCS, Autrey, and Toivanen, because they knew or should have known of Defendant Jaurique's grooming and abuse of high school students including Plaintiff Doe, were deliberately indifferent to the constitutional rights of Plaintiff Doe as exemplified by its complete failure to protect Plaintiff Doe, which caused her to suffer continuing physical, mental, and emotional abuse.  Defendants GCCS, Autrey, and Toivanen were aware of the risk Defendant Jaurique posed to female students, including Plaintiff Doe, and the serious harm that would follow from failing to take any action, yet Defendants GCCS, Autrey, and Toivanen consciously proceeded in disregard of the consequences.

193.    The actions and inactions of Defendants GCCS, Autrey, and Toivanen, and GCCS's other supervisors and staff, were the result of a custom or policy which permitted or condoned (reflecting deliberate indifference to Plaintiff Doe and other female Grants High School students) Defendant Jaurique's physical, mental, and emotional abuse and manipulation of Plaintiff Doe.

194.    As a consequence of Defendants GCCS, Autrey, and Toivanen's defective supervision and custom or policy, as described herein, Plaintiff Doe has been deprived under color of law of the rights, privileges and immunities secured by the Constitution and the laws of the United States, including the right under the Fourteenth Amendment to be free from intrusions into her bodily integrity.

195.    As a direct and proximate consequence of the deprivation of her rights, Plaintiff Doe has suffered the resultant injuries and damages described herein.

## **COUNT III**

**(Plaintiff's Claims Against Defendants Autrey and Toivanen, in their individual capacities, under 42 U.S.C. § 1983 – Due Process)**

196.    Plaintiff Doe incorporates all of the preceding paragraphs as if fully stated herein.

197.    Plaintiff Doe has a right to bodily integrity under the Fourteenth Amendment to the U.S. Constitution.

198.    Defendants Autrey and Toivanen deprived Plaintiff Doe of her substantive due process right to bodily integrity under the Fourteenth Amendment to the U.S. Constitution.

199.    Defendants Autrey and Toivanen deprived Plaintiff Doe of her

Fourteenth Amendment rights to substantive due process by purposefully protecting

Defendant Jaurique; by not taking action to stop his sexual abuse of female students after

having actual knowledge of inappropriate behavior, either reported to them or actually

observed by them; and by failing to report Defendant Jaurique's inappropriate conduct and

sexual abuse of female students to law enforcement or to CYFD, thereby enabling Defendant

Jaurique to continue to sexually, physically, mentally and emotionally abuse female students,

repeatedly, including Plaintiff Doe, at Grants High School.

200.    As state actors, Defendants Autrey and Toivanen carried out, in an

impermissible manner, the functions assigned to them by Defendant GCCS.

201.    Defendants Autrey and Toivanen engaged in actions and omissions

which were egregious, outrageous, or fraught with unreasonable risk.  Such actions harmed

Plaintiff Doe, who was a member of a particular, limited, closed group, namely, female

students at Grants High School.

202.    Defendants Autrey and Toivanen were not involved in a situation

demanding, split-second judgments.  Instead, Defendants Autrey and Toivanen had time for

thoughtful deliberation.

203.    Defendants Autrey and Toivanen's conduct shocks the conscience.

204.    Defendants Autrey and Toivanen's conduct was a direct and

proximate cause of Plaintiff Doe's injuries and resultant damages.

205.    Defendants Autrey and Toivanen's conduct was intentional, reckless,

willful, and done with callous disregard for Plaintiff Doe's constitutional rights.  As such,

Plaintiff Doe is entitled to recover an award of punitive and exemplary damages against

Defendants Autrey and Toivanen in amounts to be determined at trial.

206.    The constitutional rights of Plaintiff Doe violated by Defendants Autrey and Toivanen were clearly established prior to incidents described herein, and any reasonable school administrator, teacher, or staff member would have been aware that the conduct described herein would violate Plaintiff Doe's constitutional rights.

## COUNT IV

**(Plaintiff's Claim Against Defendant Jaurique
under 42 U.S.C. § 1983 – Equal Protection)**

207.    Plaintiff Doe incorporates all of the preceding paragraphs as if fully set forth herein.

208.    At all times relevant to this Complaint, Plaintiff Doe enjoyed the right to equal protection of the law under the Fourteenth Amendment.

209.    Defendant Jaurique's male students were similarly situated to Plaintiff Doe.

210.    Defendant Jaurique sexually assaulted, battered, and harassed Plaintiff Doe and other female students.

211.    Defendant Jaurique did not, however, sexually assault, batter, or harass male students, as he did Plaintiff Doe and other female students.

212.    Defendant Jaurique sexually assaulted, battered, and harassed Plaintiff Doe and other female students because of their gender and for his own sexual gratification.  In doing so, Defendant Jaurique violated Plaintiff Doe's Fourteenth Amendment right to equal protection of the law.

213.    Defendant Jaurique acted with the purpose of causing harm to and victimizing Plaintiff Doe, and not to accomplish any legitimate goal.

214.    The conduct of Defendant Jaurique, as alleged herein, was a direct and proximate cause of Plaintiff Doe's injuries and damages.

215.    Defendant Jaurique's conduct involved intentional misconduct, recklessness, willfulness, and callous indifference to Plaintiff' Doe's rights. As Defendant Jaurique's conduct was motivated by malice, evil motive or intent, Plaintiff is entitled to recover awards of punitive and exemplary damages against Defendant Jaurique in amounts to be determined at trial.

216.    The constitutional rights Defendant Jaurique violated were clearly established prior to September, 2013, and any reasonable high school administrator, teacher or coach would have been aware that the conduct described herein would violate Plaintiff's constitutional rights.

## COUNT V

**(Plaintiff's Claims Against Defendant GCCS, and Defendants Autrey and Toivanen, in their individual and official capacities, under 42 U.S.C. § 1983 – Equal Protection)**

217.    Plaintiff Doe incorporates all of the preceding paragraphs as if fully set forth herein.

218.    As administrators for GCCS, Defendants Autrey and Toivanen were GCCS policy makers.

219.    At all times relevant to this complaint, Plaintiff Doe enjoyed the right to equal protection of the law under the Fourteenth Amendment.

220.    GCCS male students were similarly situated to Plaintiff Doe and other female students.

221.    All of the allegations discussed herein involve female students, rather than

28

male students.

222.    Defendant Jaurique sexually assaulted, battered, and harassed Plaintiff Doe and other female students for his own sexual gratification.

223.    Defendant GCCS's failure to adequately train, delineate proper procedure in response to repeated allegations of inappropriate teacher conduct against female students, and ensure teachers who have been the subject of multiple such complaints are not permitted to continue teaching is so permanent and well settled that it constitutes a pattern and practice. That pattern and practice was a moving force behind the deprivation of Plaintiff Doe's right to equal protection under the law.

224.    Defendant GCCS, because it knew or should have known of Defendant Jaurique's grooming and abuse of female high school students including Plaintiff Doe, was deliberately indifferent to the constitutional rights of Plaintiff Doe as exemplified by its complete failure to protect Plaintiff Doe, which caused her to suffer continuing physical, mental, and emotional abuse.

225.    The actions and inactions of Defendant GCCS, and its supervisors and staff, were the result of a custom or policy which permitted or condoned (reflecting deliberate indifference to Plaintiff Doe and other female Grants High School students) Defendant Jaurique's physical, mental, and emotional abuse and manipulation of Plaintiff Doe and other female students.

226.    As a consequence of Defendant GCCS's defective supervision and custom or policy, as described herein, Plaintiff Doe has been deprived under color of law of the rights, privileges and immunities secured by the Constitution and the laws of the United States, including the right to equal protection.

227.    In addition to their policy-making roles, Defendants Autrey and Toivanen encouraged Defendant Jaurique's sexual assault, battery and harassment of Plaintiff Doe and other female students by allowing Defendant Jaurique continued access to female students, like Plaintiff Doe, despite previous reports about his sexual abuse of female students, and by failing to protect Plaintiff Doe from Defendant Jaurique, whose sexual misconduct was known to Defendants Autrey and Toivanen.  Defendants Autrey and Toivanen acted with deliberate indifference to this known sexual harassment and thus violated Plaintiff Doe's right to equal protection under the law.

228.    Defendants' acts did not further a government interest.

229.    The conduct of Defendants, as alleged herein, was a direct and proximate cause of Plaintiff Doe's injuries and damages.

230.    Defendants Autrey and Toivanen's conduct involved intentional misconduct, recklessness, willfulness, and callous indifference to Plaintiff Doe's rights. As this conduct was motivated by malice, evil motive or intent, Plaintiff Doe is entitled to recover awards of punitive and exemplary damages against Defendant Autrey and Toivanen in amounts to be determined at trial.

231.    The constitutional rights Defendants violated were clearly established prior to September, 2013, and any reasonable school district, high school administrator, teacher or coach would have been aware that the conduct described herein would violate Plaintiff's constitutional rights.

## COUNT VI

### (Plaintiff's Claim Against Defendant Jaurique under 42 U.S.C. § 1983 – Unreasonable Seizure/Detention)

232.    Plaintiff Doe incorporates all of the preceding paragraphs as if fully set forth herein.

233.    At the time of Defendant Jaurique's sexual assaults, batteries, and harassment of Plaintiff Doe, and in addition to the above grounds for relief, Plaintiff Doe enjoyed the right to be free from unreasonable seizure under the Fourth and Fourteenth Amendments to the U.S. Constitution.

234.    Generally, Plaintiff Doe was not free to leave Defendant Jaurique's classroom, the welding shop, or the tool room within the welding shop.  If she did so without permission, she would be subject to discipline.

235.    Generally, Plaintiff Doe was not free to refuse specific assignments from teachers, such as working in the tool room during her welding class.

236.    Defendant Jaurique unreasonably seized Plaintiff Doe when he cornered Plaintiff Doe within the school, including but not limited to his classroom, welding shop, and the tool room, and sexually harassed, assaulted and battered her.

237.    Plaintiff Doe did not feel like she was free to leave when Defendant Jaurique sexually harassed, assaulted, and battered her.

238.    When Defendant Jaurique sexually harassed, assaulted, and battered Plaintiff Doe, he did not have a legitimate purpose for the detention.

239.     Defendant Jaurique's sexual harassment, assaults, and batteries of Plaintiff Doe violated her Fourth and Fourteenth amendment rights to be free from unreasonable seizures.

240.     The conduct of Defendant Jaurique, as alleged herein, was a direct and proximate cause of Plaintiff Doe's injuries and damages.

241.     Defendant Jaurique's conduct involved intentional misconduct, recklessness, willfulness, and callous indifference to Plaintiff' Doe's rights.  As Defendant Jaurique's conduct was motivated by malice, evil motive or intent, Plaintiff is entitled to recover awards of punitive and exemplary damages against Defendant Jaurique in amounts to be determined at trial.

242.     The constitutional rights Defendant Jaurique violated were clearly established prior to September, 2013, and any reasonable high school administrator, teacher or coach would have been aware that the conduct described herein would violate Plaintiff's constitutional rights.

## <u>COUNT VII</u>

**(Plaintiff's Claim against Defendant GCCS under Title IX (20 U.S.C. §§ 1681-1688) for Sexual Abuse)**

243.     Plaintiff Doe incorporates all of the preceding paragraphs as if fully stated herein.

244.     At all times material hereto, Plaintiff Doe was a student at Grants High School, which was owned, controlled, operated, and administered by Defendant GCCS.

245.     The sexual abuse perpetrated by Defendant Jaurique against Plaintiff Doe

was so severe, pervasive, and objectively offensive that it deprived her of access to the educational opportunities or benefits provided by the school.

246. Defendant GCCS had actual and constructive knowledge that Defendant Jaurique was sexually abusing female students, including Plaintiff Doe.

247. Defendant GCCS was deliberately indifferent to the inappropriate and illegal conduct that Defendant Jaurique subjected upon Plaintiff Doe.

248. Defendant GCCS was deliberately indifferent to the hostile environment that employees of Defendant GCCS subjected upon Plaintiff Doe when she was in school.

249. Defendant GCCS had the authority and power to remedy the hostile environment facing Plaintiff Doe, but failed to do so.

250. Upon information and belief, Defendant GCCS failed to provide adequate instruction and education to Grants High School students, faculty, and staff about sexual abuse, and failed to enforce any existing policies to prohibit or discourage the sexually abusive and hostile environment facing Plaintiff Doe at the hands of Defendant Jaurique.

251. Defendant GCCS acted with deliberate indifference and recklessness with respect to the sexually abusive and hostile environment facing Plaintiff Doe.

252. Upon information and belief, at all times material hereto, Defendant GCCS received federal funding and financial assistance.

253. Defendant GCCS had a duty under Title IX, 20 U.S.C. § 1681, to provide an educational environment in which no student, including Plaintiff Doe, should be excluded from education, denied the benefits of education, or discriminated against on the basis of sex.

254. At all times material hereto, Defendant GCCS, acting through its officials,

administrators and employees, maintained customs and policies which permitted or condoned sexual abuse of students by staff, teachers, and coaches in connection with official school activities.

255.   As a result of these customs and policies, Plaintiff Doe was subjected to invasive, severe and objectively offensive sexual, physical, emotional, and mental abuse by Defendant Jaurique during school hours and official school activities.  The sexual assaults and batteries upon Plaintiff Doe, described above, were the natural and inevitable consequence of officially sanctioned but effectively unsupervised classroom and school activities.

256.   Defendant GCCS, and its officials, administrators, supervisors, and employees, had actual knowledge of the sexual abuse, harassment, and discrimination inflicted upon Plaintiff Doe and others by Defendant Jaurique, had the authority to address such misconduct, but failed to adequately respond.  Defendant GCCS's acts and omissions, acting or failing to act through its officials, administrators, supervisors, and employees, amounted to deliberate indifference to the sexual abuse and harassment of, and discrimination against, Plaintiff Doe.

257.   Upon information and belief, Defendant GCCS failed to properly and adequately instruct its administrators, supervisors, employees, and contractors as to how to respond to inappropriate sexual advances, or other inappropriate behavior by adult GCCS employees toward students enrolled in Grants High School.  Defendant GCCS has not developed or promulgated adequate policies addressing issues of sexual abuse and harassment by teachers or staff members against students.  The deliberate indifference of Defendant GCCS, and its officials, administrators, and employees, to the acts of sexual

abuse, as well as its failure to adopt, publish, and inculcate appropriate policies regarding

such abuse and harassment, deprived Plaintiff Doe of benefits under Title IX, and subjected

her to discrimination on the basis of her sex, female, in violation of Title IX.  It further

caused Plaintiff Doe to be excluded from participation in, denied the benefits of, and be

subjected to discrimination on the basis of sex under an education program or activity

receiving federal financial assistance.

258.    As a direct and proximate consequence of the discrimination and violation of

Title IX, Plaintiff Doe suffered the resultant injuries and damages described herein.

## <u>COUNT VIII</u>

### (Plaintiff's Claims against Defendants GCCS, Autrey, and Toivanen under the New Mexico Tort Claims Act – NMSA 1978, § 41-4-6)

259.    Plaintiff Doe incorporates all of the preceding paragraphs as if fully stated

herein.

260.    At all times material hereto, Defendant GCCS operated Grants High School,

which Plaintiff Doe attended, as well as other public schools in Grants, New Mexico.

261.    At all times material hereto, Defendant Autrey served as Principal of Grants

High School.

262.    At all times material hereto, Defendant Toivanen served as Personnel Director

for GCCS.

263.    Defendant GCCS and its employees, including Defendants Autrey, and

Toivanen, who were acting in the scope of their employment with Defendant GCCS, had the

duty in any activity actually undertaken to exercise for the safety of others, including

Plaintiff Doe, that care ordinarily exercised by a reasonable, prudent, and qualified person in their position in light of the nature of what was being done.

264.    Defendant GCCS had a duty to Plaintiff Doe to exercise reasonable care in the maintenance and operation of Grants High School and to keep all its educational premises in a safe condition.

265.    Defendants Autrey and Toivanen likewise had a duty to Plaintiff Doe and similarly-situated students to exercise reasonable care in the maintenance and operation of Grants High School.

266.    Defendants GCCS, Autrey, and Toivanen had a further duty to supervise its employees, contractors, and agents in order to ensure that they did not act negligently in the operation or maintenance of their buildings.

267.    Supervision includes the obligation to adopt and inculcate reasonable and proper operational policies and procedures concerning the safe operation of Defendant GCCS's educational facilities, including appropriate policies and procedures regarding employee training, adequate monitoring and regulation of employees' activities, and other such policies and procedures as are reasonably necessary to ensure adequate safety in the operation and maintenance of Defendant GCCS's educational facilities, such as Grants High School, in order to avoid unsafe, dangerous or defective conditions on the premises.

268.    Defendants GCCS, Autrey, and Toivanen, in maintaining and operating the premises of Grants High School in a safe condition, necessarily had a duty to supervise its teachers and other employees and to protect its students, including Plaintiff Doe, from sexual assaults, batteries, abuse, or harassment from other persons, including Defendant Jaurique.

269.    Defendant GCCS, acting through its administrators, supervisors, employees, and contractors, had the duty to adopt and implement proper safety policies and procedures to protect its minor students, including Plaintiff Doe, from sexual assaults, batteries, abuse, or harassment from other persons, including Defendant Jaurique.

270.    Defendant GCCS, acting through its administrators, supervisors, employees, and contractors, had a duty to investigate and act upon any suspicions or reports of improper sexual assaults, batteries, abuse or harassment by GCCS employees or agents against any student attending Defendant GCCS's schools.

271.    Defendants GCCS, Autrey, and Toivanen failed to exercise reasonable care in the maintenance of the premises because they repeatedly ignored the warning signs and the readily observable (and reported) inappropriate behavior of Defendant Jaurique toward female students, including Plaintiff Doe.

272.    Defendants GCCS, Autrey, and Toivanen failed to use ordinary care to protect Plaintiff Doe from the danger posed to her by Defendant Jaurique.

273.    Defendants GCCS, Autrey, and Toivanen breached these duties that it owed Plaintiff Doe.

274.    Defendants GCCS, Autrey, and Toivanen further breached their duties by failing to properly screen, hire, train, monitor, supervise and/or discipline employees of Grants High School, such as Defendant Jaurique, as well as by failing to enforce appropriate policies, procedures and protocols regarding safety in student-teacher interactions, and by otherwise failing to take appropriate and reasonable supervisory actions to correct the potential problems and prevent the harm and injuries incurred by Plaintiff Doe.

275.    Defendant GCCS is jointly and severally liable for all injuries and damages

caused by the actions of its officials and/or employees, including Defendants Autrey, Toivanen, and Jaurique, under the doctrines of vicarious liability and *respondeat superior*.

276.    Furthermore, through the significant power and control vested in him by Defendants GCCS, Autrey, and Toivanen, Defendant Jaurique was able to isolate and sexually assault female students including Plaintiff Doe.  Plaintiff Jaurique was aided in accomplishing the above-described sexual abuse through his powerful status as a teacher, such that his actions were aided by his employment and affiliation with GCCS.

277.    Defendants are vicariously liable for the conduct of Defendant Jaurique under the theory of "aided-in-agency" regardless of the scope of Defendant Jaurique's employment as a teacher.

278.    The above-described conduct of Defendants GCCS, Autrey, and Toivanen was a direct and proximate cause of the injuries to Plaintiff Doe and the resultant damages described herein.

## PRAYER FOR RELIEF

279.    Plaintiff Doe incorporates all of the preceding paragraphs as if fully stated herein.

280.    As a direct and proximate result of the wrongful and unlawful acts and omissions of all Defendants, as described above, Plaintiff Jane Doe was injured, suffered, and continues to suffer damages, including, but not limited to:  severe emotional distress, anguish, suffering, humiliation, depression, psychological injuries, indignities, loss of enjoyment of life, deprivation of constitutional rights, invasion of bodily integrity, and other damages.

281.    As a result of the above-described damages and injuries, Plaintiff Doe is entitled to recover awards of full compensatory damages against all Defendants in amounts to be determined at the trial of this cause.

282.    Plaintiff Doe requests damages in an amount sufficient to compensate her for all injuries and harm she suffered, as well as punitive damages as provided by law, along with costs of this action, pre- and post- judgment interest as provided by law, reasonable attorneys' fees as provided by law, and such other and further relief as proves just.

283.    Plaintiff Doe requests a trial by jury on all issues so triable.

Respectfully submitted,


ROTHSTEIN DONATELLI LLP

/s/ Carolyn M. "Cammie" Nichols 4/27/17
CAROLYN M. "CAMMIE" NICHOLS
MAGGIE H. LANE
500 4th St. NW Suite 400
Albuquerque, New Mexico 87102
(505) 243-1443
cmnichols@rothsteinlaw.com
mhlane@rothsteinlaw.com

*Attorneys for Plaintiff Doe*